UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

TORAN V. PETERSON #318935,

                Plaintiff,                                  Hon. Janet T. Neff

v.                                                    Case No. 1:19-cv-145

UNKNOWN DESROCHERS, et al.,

                Defendants.

_____/

## REPORT AND RECOMMENDATION

This matter is before the Court on Defendants' Motion for Summary Judgment. (ECF No. 77.)  Pursuant to 28 U.S.C. § 636(b)(1)(B), I recommend that Defendants' motion be **GRANTED IN PART AND DENIED IN PART**.

### I.  Background

Plaintiff, a prisoner currently incarcerated with the Michigan Department of Corrections (MDOC) at Gus Harrison Correctional Facility, sued MDOC employees Unknown Desrochers, Unknown Toogood, and Unknown Lake, pursuant to 42 U.S.C. § 1983, alleging claims based on events that occurred while Plaintiff was housed at Ionia Correctional Facility (ICF) in Ionia, Michigan. At the time, Defendant Desrochers was a sergeant, Defendant Toogood was a corrections officer, and Defendant Lake was a nurse at ICF.

According to Plaintiff's verified complaint, the events at issue occurred on the evening of February 24, 2016, while Plaintiff was housed in segregation at ICF. Plaintiff alleges that Defendant Desrochers went to his cell to collect Plaintiff's foam food tray but never opened the food slot to allow Plaintiff an opportunity to pass him his foam tray and related items. Instead,

1

Defendant Desrochers rolled the high security food cart to Plaintiff's cell door and told Plaintiff, "I'm going to gas your ass." (ECF No. 1 at PageID.2.) Plaintiff responded that there would be no need for gas because he would comply with Defendant Desrochers's commands. Plaintiff also stated that his compliance would be seen on camera when he placed his arms through the food slot when Defendant Desrochers opened it. Defendant Desrochers replied that he had ways to block the camera's view, including having the extraction team members simply block the view. (*Id.*)

Desrochers left and returned shortly thereafter with approximately eight extraction team officers dressed in full riot gear, while shaking a container of chemical agent "nicknamed gas." Plaintiff states that, although he was already standing with his back to the door, Defendant Desrochers told him to back up to the door, as a ruse to make it appear that Plaintiff was not complying. Desrochers then opened the food slot and sprayed Plaintiff with a chemical agent. Plaintiff claims that he put his blanket in the food slot to attempt to stop the chemical spray and then placed his arms all the way out, but Desrochers continued to spray him. (*Id.* at PageID.2–3.) Once the extraction team entered the cell, a team member placed Plaintiff in handcuffs, which Plaintiff alleges were too tight.

Plaintiff alleges that on the way to the shower, Defendant Toogood intentionally bent Plaintiff's left wrist to the point that his left hand was numb, and the handcuffs cut through his skin leaving gashes and scarring. Plaintiff was then placed in the shower, where Toogood strip searched him. Toogood then refused to give Plaintiff soap in the shower to wash the chemical agent off his body. (*Id.* at PageID.3.) Plaintiff was placed in belly chains and handcuffs and returned to his cell. Before Plaintiff was taken to his cell, Defendant Lake came to check the restraints but did not properly check them. Defendant Lake also is alleged to have ignored

Plaintiff's request for medial attention to his left wrist and falsified Plaintiff's medical records. (*Id.* at PageID.3–4.)

Defendants' counsel deposed Plaintiff on July 15, 2020. (ECF No. 7-2.) His testimony was largely consistent with his allegations in his complaint. Plaintiff stated that he was missing something on his food tray and told the officer on duty, who notified Defendant Desrochers. Defendant Desrochers went to Plaintiff's cell and said that Plaintiff refused to give him the tray. (*Id.* at PageID.455.) Plaintiff confirmed that when Desrochers came to his cell, he told Plaintiff that he was going to "gas" him, but Plaintiff responded that he was not going to get the chance because Plaintiff would comply. (*Id.* at PageID.457.) Plaintiff said that when Defendant Desrochers returned with the extraction team, they had on "full riot gear," and although he could see them, he did not know who was behind the masks. (PageID.458.) Plaintiff said that although he was already standing at the door, Defendant Desrochers "popped the food slot and started spraying gas" in his cell. (*Id.*) Once Defendant Desrochers started spraying, Plaintiff placed his blanket in the food slot to protect himself from the chemical spray and slid his arms outside so the officers could cuff him, but Defendant Desrochers continued spraying. Plaintiff said that Defendant Desrochers used the spray for about ten seconds. (*Id.* at PageID.459.) Plaintiff testified that after he was handcuffed and was being escorted backwards to the shower, he determined that Defendant Toogood was the officer who grabbed and bent his wrists. Plaintiff said that he knew it was Defendant Toogood because Defendant Toogood was following Plaintiff as he was being walked backward, and his hands were toward Defendant Toogood. (*Id.* at PageID.459–60.)

In addition to the foregoing, Plaintiff submitted a declaration in response to Defendants' motion, which is generally consistent with his verified complaint and his deposition testimony. (ECF No. 99-5.) Plaintiff adds that he was able to identify Defendant Toogood because he has a

mustache that curls up and he was able to see his distinctive mustache through the gas mask. (*Id.* at PageID.621.)

In his affidavit, Defendant Desrochers recounts a different version. He states that he was called to Plaintiff's cell to ask him to relinquish his foam tray, utensils, and garbage, which Plaintiff was not permitted to keep. Plaintiff refused his request to relinquish the items. Defendant Desrochers told Plaintiff that he would be forced to return with an extraction team to retrieve the items if Plaintiff did not comply, but Plaintiff again refused to comply. Desrochers left and obtained authorization from the deputy warden to assemble an extraction team. He also sought authorization to use chemical spray. (ECF No. 78-3 at PageID.475–76.)

After obtaining authorization, Defendant Desrochers assembled a six-member extraction team and returned to Plaintiff's cell with chemical agent, or pepper spray. Desrochers again attempted to get Plaintiff to comply with verbal commands to come to his cell door to be handcuffed and removed from the cell, but Plaintiff refused, instead covering his face with a cloth and blocking the food slot with a blanket. (*Id.* at PageID.476–77.) Desrochers gave a final loud verbal command to Plaintiff to uncover his face and allow himself to be handcuffed, but Plaintiff refused to comply. When Plaintiff refused, Desrochers administered a two-to-three second burst of chemical spray into Plaintiff's cell, after which Plaintiff removed the blanket and attempted to grab the chemical spray from Desrochers's hand. Desrochers gave Plaintiff another command to put his hands outside the food slot to be handcuffed, and Plaintiff complied. (*Id.* at 477–78.)

In his affidavit, Defendant Toogood states that he did not put handcuffs on Plaintiff's wrist, nor did he transport Plaintiff to the shower. Instead, Officers Shafer and Bowerman were in charge of escorting Plaintiff to the shower. (ECF No. 78-5 at PageID.492–93.)

Plaintiff asserts the following claims: (1) Defendant Desrochers subjected Plaintiff to excessive force by spraying him with chemical agent; (2) Defendant Toogood used excessive force on Plaintiff's wrist; (3) Defendant Toogood was deliberately indifferent to Plaintiff's serious health needs by denying Plaintiff soap or solution to wash off the chemical agent in the shower; and (4) Defendant Lake was deliberately indifferent to Plaintiff's need for medical attention.

## II.    Summary Judgment Standard

Summary judgment is appropriate if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). Material facts are facts that are defined by substantive law and are necessary to apply the law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute is genuine if a reasonable jury could return judgment for the non-moving party. *Id.*

The court must draw all inferences in a light most favorable to the non-moving party but may grant summary judgment when "the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." *Agristor Fin. Corp. v. Van Sickle*, 967 F.2d 233, 236 (6th Cir. 1992) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

## III.    Discussion

### A.    Statute of Limitations

Defendants contend that Plaintiff's claims are barred by the three-year statute of limitations applicable to claims brought in Michigan under 42 U.S.C. § 1983. *See Wolfe v. Perry*, 412 F.3d 707, 714 (6th Cir. 2005); *Carroll v. Wilkerson*, 782 F.2d 44, 44 (6th Cir. 1986) (per curiam). Defendants note that Plaintiff's claims arose on February 24, 2016, but Plaintiff did not file his complaint in this Court until February 27, 2019—three days too late.

Defendants' argument lacks merit because prisoners receive the benefit of the "mailbox rule" when they file claims brought under Section 1983. *Aldridge v. Gill*, 24 F. App'x 428, 429

5

(6th Cir. 2001) (citing *Cooper v. Brookshire*, 70 F.3d 377, 378 (5th Cir. 1995)). Here, Plaintiff's complaint is dated February 20, 2019, and the envelope was postmarked February 22, 2019—two days before the limitations period expired. (ECF No. 1 at PageID.5, 7.) Accordingly, Plaintiff timely filed his complaint.

### B.    Excessive Force

The Eighth Amendment's prohibition against cruel and unusual punishment applies not only to punishment imposed by the state, but also to deprivations that occur during imprisonment and are not part of the sentence imposed. *See Farmer v. Brennan*, 511 U.S. 825, 834 (1994); *Estelle v. Gamble*, 429 U.S. 97, 101-02 (1976). Punishment that is without penological justification or involves the unnecessary and wanton infliction of pain also violates the Eighth Amendment's proscriptions. *See Rhodes v. Chapman*, 452 U.S. 337, 346 (1981). In other words, the Eighth Amendment prohibits "the gratuitous infliction of suffering." *Gregg v. Georgia*, 428 U.S. 153, 183 (1976).

The Supreme Court has held that, "whenever guards use force to keep order," the standards set forth in *Whitley v. Albers*, 475 U.S. 312 (1986), should be applied. *Hudson v. McMillian*, 503 U.S. 1, 6 (1992). Under *Whitley*, the core judicial inquiry is "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Hudson*, 503 U.S. at 6–7. In determining whether the use of force is wanton and unnecessary, a court should evaluate the need for application of force, the relationship between that need and the amount of force used, the threat "reasonably perceived by the responsible officials," and any effort made to temper the severity of the forceful response. *Id.* (citing *Whitley*, 475 U.S. at 321). In *Wilkins v. Gaddy*, 559 U.S. 34 (2010), the Supreme Court affirmed that the "core judicial inquiry" is "not whether a certain quantum of injury was sustained." *Id.* at 37 (quoting *Hudson*, 503 U.S. at 7). The degree of injury is still relevant to the inquiry, as it may shed some light on the amount of

force used, but "[a]n inmate who complains of a "push or shove" that causes no discernible injury almost certainly fails to state a valid excessive force claim." *Id.* at 38 (quoting *Hudson*, 503 U.S. at 9).

### 1.    Defendant Desrochers

It is well established that the use of chemical spray is a constitutionally-permissible application of force when used to restore order or to gain an inmate's compliance. *See Jennings v. Mitchell*, 93 F. App'x 723, 725 (6th Cir. 2004); *White v. Fowler*, No. 88-2216, 1989 WL 88479, at *1 (6th Cir. Aug. 8, 1989) (affirming grant of summary judgment to corrections officer who used chemical spray on the plaintiff in order to restore discipline and security on a prison bus). On the other hand, the use of chemical or pepper spray on a prisoner may violate the Eighth Amendment where it is applied without penological justification. *See Foulk v. Charrier*, 262 F.3d 687, 701–02 (8th Cir. 2001) (finding sufficient evidence to support an Eighth Amendment violation where the prisoner testified that he was sprayed in the face with pepper spray even though he was compliant and noting that such conduct was a "malicious and sadistic use of force by a prison official against a prisoner, done with the intent to injure and causing actual injury"); *Smith v. Bigham*, No. 1:17-cv-128, 2018 WL 2100518, at *6 (S.D. Ohio May 7, 2018), *report and recommendation adopted*, 2018 WL 2735648 (S.D. Ohio June 7, 2018) (denying summary judgment because "construing disputed facts in Plaintiff's favor as to the circumstances under which the pepper spray was allegedly deployed, the Defendant is not entitled to summary judgment because even if the injury that resulted was *de minimis*, the use of OC spray was for no reason other than in retaliation for Plaintiff's complaints, and therefore was purely malicious and sadistic").

Here, Plaintiff alleges that, even though he was complying with Defendant Desrochers's commands to back up to the cell door to be handcuffed, Defendant Desrochers gratuitously used chemical spray on him. Defendants acknowledge that Plaintiff's testimony that Defendant Desrochers "gassed" him even though he was complying with orders would be admissible at trial, but they argue that this claim should be dismissed because Plaintiff has no admissible evidence to corroborate his version of events against Defendant Desrochers. (ECF No. 78 at PageID.418–21.) In other words, Defendants assert that Plaintiff cannot defeat summary judgment on his claim against Defendant Desrochers absent evidence that corroborates Plaintiff's testimony.

Defendants cite no case for their testimony-plus-corroboration rule, and it is contrary to well-established law. In fact, *March v. Levine*, 249 F.3d 462 (6th Cir. 2001), which Defendants cite, plainly states that in deciding a summary judgment motion, "[t]he evidence of the non-movant must be believed and all reasonable inferences must be drawn in the non-movant's favor." *Id.* at 471. That means that the Court must accept Plaintiff's testimony as true, even if it is undermined by other evidence in the record. Defendants' argument invites clear error by asking the Court to disregard well-established law that a court cannot resolve credibility issues on summary judgment, weigh the evidence in the record, and accept their version of events. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986) ("Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge[.]"). Moreover, the Sixth Circuit has recognized that a plaintiff's own testimony can defeat summary judgment. "Although perhaps not as strong as some other evidence might be, self-serving statements can create a genuine dispute of material fact to be resolved at trial." *Davis v. Gallagher*, 951 F.3d 743, 750 (6th Cir. 2020). Plaintiff's testimony, alone, creates an issue of fact for the jury.

Finally, as Plaintiff correctly argues, if Defendants possessed a video of the incident, they could have submitted it to demonstrate that Plaintiff's testimony is "blatantly and demonstrably false," thereby establishing Defendant Desrochers' entitlement to summary judgment on Plaintiff's claim against him. *Id.* (citing *Scott v. Harris*, 550 U.S. 372, 380 (2007)). But they have presented no such evidence, and a question of fact remains for the jury.

Accordingly, I recommend that Defendants' motion be denied as to the claim against Defendant Desrochers.

### 2.    Defendant Toogood

Plaintiff's first Eighth Amendment claim against Defendant Toogood is that he used excessive force by bending Plaintiff's wrists down into the handcuffs while Plaintiff was being walked to the shower. (ECF No. 78-2 at PageID.462.) Similar to the claim against Defendant Desrochers, Defendants argue that the excessive force claim against Defendant Toogood fails because it "is entirely uncorroborated by any admissible evidence to create a *genuine* issue for trial." (ECF No. 78 at PageID.429 (italics in original).) For the reasons stated above, this argument fails as well.

Defendants next argue that Plaintiff's claim is subject to dismissal because the admissible evidence shows that Defendant Toogood was not the officer who handcuffed Plaintiff and he did not escort Plaintiff to the shower. Rather, Defendants contend, Officers Bowerman and Schafer did. This evidence comes from Desrochers's and Toogood's affidavits. (ECF No. 78-3 at PageID.478–79; ECF No. 78-5 at PageID.493.) But Plaintiff's testimony directly contradicts these affidavits. In his deposition, Plaintiff testified that when the extraction team came to his cell, he could not identify them because he did not know who was behind the masks. (ECF No. 78-2 at PageID.458.) Plaintiff later testified, however, that as he was being walked backward to the

shower, Defendant Toogood was walking facing Plaintiff and grabbed his wrist. (*Id.* at PageID.459.) Plaintiff said that he was certain that it was Defendant Toogood because he saw Toogood's face through the riot gear. (*Id.* at PageID.460.) In addition, in his declaration in support of his response, Plaintiff adds that Defendant Toogood has a distinctive mustache and that the individual who bent his wrist had this type of mustache.[1]  (ECF No. 99-5.)

Defendants further argue that Plaintiff's testimony is "shaky at best" and that "[t]he admissible evidence . . . overwhelmingly proves Toogood did not do what [Plaintiff] alleges," (ECF No. 78 at PageID.430–31), but they cite no case holding that shaky evidence cannot defeat a motion for summary judgment. In fact, the Sixth Circuit has observed that "vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *Avery Dennison Corp. v. Four Pillars Enter. Co.*, 45 F. App'x 479, 483–84 (6th Cir. 2002) (citing *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 596 (1993)).

Accordingly, an issue of fact remains as to whether Defendant Toogood escorted Plaintiff to the shower and used excessive force on Plaintiff's wrist.[2]

---

[1] Defendants have not filed a reply arguing that Plaintiff's declaration contradicts his prior deposition testimony in any manner. In fact, Plaintiff's declaration does not contradict his prior deposition testimony but instead provides more details as to why he believes Toogood was the person he saw. *See Aerel, S.R.L. v. PCC Airfoils, LLC*, 448 F.3d 899, 908 (6th Cir. 2006). Moreover, there is no indication that Plaintiff's declaration was "an attempt to create a sham fact issue." *Id.* (internal quotation marks omitted).

[2] In his affidavit, Defendant Desrochers states that Bowerman and Schafer escorted Plaintiff to the shower and that, on the way, they applied a "'gooseneck' wrist lock"—an authorized technique to secure noncompliant prisoners or to control a combative prisoner's hands—on Plaintiff to confirm that Plaintiff did not have a weapon or contraband in his clenched hands. (ECF No. 78-3 at PageID.478.) Because it is not clear whether Defendant Desrochers was actually present during this time and witnessed this conduct, this portion of his affidavit should be disregarded for purposes of the instant motion.

### C.    Deliberate Indifference

The unnecessary and wanton infliction of pain proscribed by the Eighth Amendment encompasses "deliberate indifference" to an inmate's "serious medical needs." *Estelle*, 429 U.S. at 104-06; *Napier v. Madison Cty.*, 238 F.3d 739, 742 (6th Cir. 2001). Determining whether denial of medical care amounts to an Eighth Amendment violation involves two steps. First, the court must determine, objectively, whether the alleged deprivation was sufficiently serious. A "serious medical need" sufficient to implicate the Eighth Amendment is "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Harrison v. Ash*, 539 F.3d 510, 518 (6th Cir. 2008). Thus, the objective component is satisfied where a prisoner receives no treatment for a serious medical need. *See Rhinehart v. Scutt*, 894 F.3d 721, 737 (6th Cir. 2018). If the plaintiff's claim, however, is based on "the prison's failure to treat a condition adequately, or where the prisoner's affliction is seemingly minor or non-obvious," *Blackmore v. Kalamazoo Cty.*, 390 F.3d 890, 898 (6th Cir. 2004), the plaintiff must "place verifying medical evidence in the record to establish the detrimental effect of the delay in medical treatment." *Napier*, 238 F.3d at 742 (internal quotation marks omitted).

If the plaintiff satisfies the objective component, he must then demonstrate that the defendant possessed a sufficiently culpable state of mind. In other words, the plaintiff "must present evidence from which a trier of fact could conclude 'that the official was subjectively aware of the risk' and 'disregard[ed] that risk by failing to take reasonable measures to abate it." *Greene v. Bowles*, 361 F.3d 290, 294 (6th Cir. 2004) (citing *Farmer*, 511 U.S. at 829, 847). To satisfy this part of the analysis, the plaintiff must demonstrate that the defendant acted with "deliberateness tantamount to intent to punish." *Miller v. Calhoun Cty.*, 408 F.3d 803, 813 (6th Cir. 2005).

### 1.    Defendant Toogood

Plaintiff alleges that Defendant Toogood was deliberately indifferent to his serious medical need when he failed to provide Plaintiff soap to wash the chemical spray off his body. Plaintiff's claim fails on both prongs of the analysis. First, as to this claim, Plaintiff alleges nothing more than that he endured the burning effects of the spray. A claim of burning skin resulting from the use of a chemical agent, without more, is insufficient to satisfy the objective component of an Eighth Amendment claim. *See Catt v. Brown*, No. 1:17-cv-513, 2017 WL 2991714, at *4 (W.D. Mich. July 14, 2017) (allegations that the plaintiff was sprayed with pepper spray failed to support an Eighth Amendment claim because he alleged nothing "more than the normal after effects of being exposed to gas and/or chemical agents" (internal quotation marks omitted)); *see also Pullen v. Combs*, No. 1:17-cv-255, 2018 WL 3911398, at *12 (S.D. Ohio Aug. 15, 2018) (concluding that the plaintiff's allegations that he suffered burning skin "all night" from chemical spray was insufficient to satisfy the objective component of an Eighth Amendment claim).

Moreover, Plaintiff fails to show that Defendant Toogood was aware that the chemical spray exposed Plaintiff to a risk of harm and that Defendant Toogood ignored that risk by failing to provide Plaintiff soap or some other unspecified solution to wash the chemical spray from his body. In his affidavit, Defendant Toogood states that he did not provide Plaintiff soap or any special solution to remove the chemical agent because his training and experience taught him that water alone is the best way to remove chemical agent. (ECF No. 78-5 at PageID.494.) Although Plaintiff contends that a cream or solution is the best way to remove chemical agent from the body (ECF No. 99-5 at PageID621), he provides no evidence that Defendant Toogood was aware of this fact. Moreover, Plaintiff provides no evidence that Defendant Toogood knew that the shower facility would provide only hot water and not cool water, as Plaintiff claims. Accordingly, Plaintiff

fails to show that Defendant Toogood was deliberately indifferent to Plaintiff's serious medical need.

### 2.    Defendant Lake

At the request of custody staff, Defendant Lake went to the shower to perform a restraint check on Plaintiff. According to Defendant Lake's note in Plaintiff's medical file, when he arrived at the shower, custody staff was placing restraints on Plaintiff. Lake checked the restraints and found that they were not too tight and moved easily. He noted no circulation concerns, no respiratory concerns, and Plaintiff was not in distress. (ECF No. 78-6 at PageID.506.) Plaintiff claims that "Lake came over to check the restraints[,] which he failed to properly do." (ECF No. 1 at PageID.3.) Plaintiff further claims that he told Defendant Lake that he needed medical attention for his wrist because it was swollen and had gashes and scarring on it, but Defendant Lake ignored his request. (*Id.*) Plaintiff claims that Defendant Lake falsified the February 24, 2016 progress note in Plaintiff's medical file. (*Id.* at PageID.4.) On February 25, 2016, Plaintiff sent a request to healthcare stating "[m]y left wrist is swollen, scarred, red, and hurts from the extraction team placing the handcuffs on too tight and bending my wrist into the handcuffs." (ECF No. 78-6 at PageID.505.)

Plaintiff's claim against Defendant Lake fails on the objective prong. That is, Plaintiff fails to demonstrate a sufficiently serious medical need such that Defendant Lake would have been alerted Plaintiff's need for medical attention. It is well established that injuries such as minor cuts and lacerations and swollen wrists from tight handcuffs are not a sufficiently serious medical condition for purposes of an Eighth Amendment deliberate indifference claim. *Lockett v. Suardini*, 526 F.3d 866, 877 (6th Cir. 2008) (citing *Blackmore*, 390 F.3d at 898); *see also Jones Bey v. Johnson*, 248 F. App'x 675, 677 (6th Cir. 2007) (pain and swollen wrists resulting from tight

handcuffs and striking a food slot are *de minimis* injuries under the Eighth Amendment); *Wesson v. Oglesby*, 910 F.2d 278, 284 (5th Cir. 1990) (holding that swollen and bleeding wrists resulting from excessively tight handcuffs did not amount to a "serious medical need"). Moreover, nothing in Plaintiff's medical records indicates that he has experienced lasting effects from the alleged injury to his wrist.

Accordingly, I recommend that Plaintiff's claim against Defendant Lake be dismissed.

### D.    Qualified Immunity

Defendants also contend that they are entitled to qualified immunity. The doctrine of qualified immunity provides that government officials performing discretionary functions are generally shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional right of which a reasonable person would have known. *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982); *Dietrich v. Burrows*, 167 F.3d 1007, 1012 (6th Cir. 1999). An "objective legal reasonableness" test is used to determine whether the official could reasonably have believed his conduct was lawful. *Anderson v. Creighton*, 483 U.S. 635, 639 (1987). The qualified immunity inquiry requires a court to decide whether the facts as alleged or shown make out a constitutional violation and whether the right that was allegedly violated was a clearly established right at the time of the alleged misconduct. *Pearson v. Callahan*, 555 U.S. 223, 232 (2009). If the court can conclude that either no constitutional violation occurred or that the right was not clearly established, qualified immunity is warranted. The court may consider either prong of the inquiry without regard to sequence. *Id.* at 236.

Here, the Court can dispose of the deliberate indifference claims against Defendants Toogood (failure to provide soap or solution) and Lake on the first prong of the qualified immunity analysis. Neither of these claims establishes a constitutional violation.

14

With regard to the excessive force claims against Defendants Desrochers and Toogood, their qualified immunity argument fails because it assumes their version of the facts. But "[i]f the district court determines that the plaintiff's evidence would reasonably support a jury's finding that the defendant violated a clearly established right, it must deny summary judgment." *Thompson v. City of Lebanon*, 831 F.3d 366, 370 (6th Cir. 2016). As set forth above, Plaintiff claims that Defendant Desrochers used chemical spray on Plaintiff even though he was compliant. Plaintiff's evidence—if a jury accepts it—would establish the violation of a clearly established constitutional right by Defendant Desrochers. *Cf. Brown v. Perez*, No. 16-2558, 2017 WL 3378994, at *2 (6th Cir. Apr. 17, 2017) (stating that "the use of a chemical agent does not constitute malicious or sadistic punishment in violation of the Eighth Amendment if its use is reasonably necessary to subdue a noncompliant prisoner"). The same is true with regard to Plaintiff's testimony that Defendant Toogood forcefully bent his wrist. Accordingly, Defendants Desrochers and Toogood are not entitled to qualified immunity on Plaintiff's excessive force claims.

### E.      Eleventh Amendment Immunity

Defendants also contend that Plaintiff's official capacity claims should be dismissed as barred by the Eleventh Amendment. A suit against a state official in his or her official capacity is not a suit against the official, but rather is a suit against the official's office. *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989). An official capacity suit is thus no different than a suit against the state itself. *See Matthews v. Jones*, 35 F.3d 1046, 1049 (6th Cir. 1994) ("A suit against an individual in his official capacity is the equivalent of a suit against the governmental entity.") Because the Eleventh Amendment prohibits suits for damages against states in federal court*, see Quern. v. Jordan*, 440 U.S. 332, 342 (1979), damage claims against state officials in their official capacities are also barred by the Eleventh Amendment. *See Ernst v. Rising*, 427 F.3d 351, 358 (6th Cir. 2005) (noting that Eleventh Amendment immunity "applies to actions against state officials

sued in their official capacity for money damages") (citing *Lapides v Bd. of Regents*, 535 U.S. 613, 616, 623 (2002)).

Plaintiff argues that his official capacity claims should be allowed to proceed because under *Monell v. New York City Department of Social Services*, 436 U.S. 658 (1978), municipalities may be held liable under Section 1983 for their policies, practices, or customs that cause a constitutional violation. Plaintiff's argument fails because it ignores the distinction between a State and its political subdivisions. Municipalities, such as counties and municipal corporations, are not entitled to sovereign immunity under the Eleventh Amendment. *See Boler v. Earley*, 865 F.3d 391, 410 (6th Cir. 2017) ("Sovereign immunity 'does not extend to counties and similar municipal corporations,' such as the defendants associated with the City of Flint in these cases.") (quoting *Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 280 (1977)); *Moore v. City of Harriman*, 272 F.3d 769, 773 n.2 (6th Cir. 2001) ("The officers are employees of a municipality, and the Eleventh Amendment does not apply to municipalities") (citing *Monell*, 436 U.S. at 690).

Accordingly, Plaintiff's official capacity claims should be dismissed.

### IV.   Conclusion

For the foregoing reasons, I recommend that Defendants' Motion for Summary Judgment (ECF No. 77) be **granted in part and denied in part** as follows: (1) the motion be denied with regard to the excessive force claims against Defendants Desrochers and Toogood; (2) the motion be granted with regard to the deliberate indifference claims against Defendants Toogood and Lake; and (3) the official capacity claims be dismissed.

Respectfully submitted,

Dated: March 16, 2021                  /s/ Sally J. Berens
                                       SALLY J. BERENS
                                       U.S. Magistrate Judge

16

**NOTICE**

OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Court within 14 days of the date of service of this notice. 28 U.S.C. § 636(b)(1)(C). Failure to file objections within the specified time waives the right to appeal the District Court's order. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).